Argued and submitted December 5, 2007, affirmed March 26, 2008

MID-CENTURY INSURANCE COMPANY,
*Plaintiff-Appellant,*

*v.*

Brianna M. TURNER
and Paul H. Krueger,
*Defendants-Respondents.*

Clackamas County Circuit Court
LV05040041; A132918

182 P3d 855

Margaret H. Leek Leiberan argued the cause for appellant. With her on the opening brief was Mason & Associates. On the reply brief were Mason & Associates and Craig O. West.

Joel S. DeVore argued the cause for respondents. With him on the brief was Luvaas Cobb.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff Mid-Century Insurance Company appeals a judgment in favor of defendant, its insured, in this action for breach of contract, money had and received, breach of settlement agreement, and breach of fiduciary duty.[1] As explained below, we agree with defendant that the trial court correctly rejected plaintiff's claims. Specifically, we conclude that, if given the effect that plaintiff urges, certain provisions of the policy that plaintiff invokes are unenforceable in that they are "less favorable" to the insured than operative provisions of the Oregon Insurance Code, *viz.*, ORS 742.534, ORS 742.536, and ORS 742.538. Accordingly, we affirm.

The pertinent facts are not in dispute; the parties submitted the controversy to the trial court pursuant to ORCP 66. Defendant had an automobile insurance policy with plaintiff that included personal injury protection (PIP) benefits. *See generally* ORS 542.520; ORS 542.524 (requiring Oregon vehicle insurance policies to provide PIP benefits). In October 2000, defendant was involved in an automobile accident with Dolan, whose vehicle was insured by USAA Casualty Insurance Co. (USAA). Plaintiff paid defendant $16,716.68 in PIP benefits for medical treatment and lost wages resulting from the accident.

In April 2002, USAA offered to settle with defendant for Dolan's policy limits of $25,000, by making a check to defendant and plaintiff jointly, stating that "[i]t will be the decision of your insurance carrier, Farmers,[2] to work out the amount they will want to keep for their PIP subrogation and the amount they would provide directly to you." Defendant declined the offer and retained the services of an attorney, Krueger, to pursue her claim against Dolan. Krueger wrote to plaintiff in June 2002 to inform it of his representation. His letter contained the following paragraph:

---

[1] Our references to defendant are to plaintiff's insured, Turner. This action was brought against both Turner and her attorney Krueger. Plaintiff concedes that the trial court properly entered judgment in Krueger's favor, and the only issues on appeal concern its claims against Turner.

[2] Mid-Century Insurance Company is part of the Farmers Insurance Group, and references to Farmers are to Mid-Century.

"This letter will also serve to confirm that, to the best of my knowledge, Farmers Insurance Group has not requested Ms. Turner to undertake any action to assist your company in its attempt to seek reimbursement for the Personal Injury Protection benefits provided to my client. If this understanding is in error, and Farmers Insurance Group does, in fact, desire [our law firm] to attempt some recovery for the PIP benefits previously paid by your company, please notify me immediately. Unless I receive contrary instructions from you, however, I will continue to assume that your company has elected to pursue its own independent rights of recovery."

In July, plaintiff responded to Krueger with a form letter that contained the following language:

"If applicable the liability carrier has been notified of our PIP payments, and we expect full reimbursement from them. In the event you or the liability carrier dispute our right to direct reimbursement under ORS 742.534, or take action to forestall our recovery, then we remind you of your client's obligations under the insurance policy and the PIP statutes. Those require that all rights of recovery be held in trust, that the insured do nothing to prejudice such rights, and that we be reimbursed to the extent of our payments.

"We do not make an election at this time, but specifically reserve all reimbursement rights available under the Oregon PIP statutes and the policy contract."

Also in July, plaintiff filed a formal claim for arbitration against USAA to recover its PIP payments pursuant to ORS 742.534.

On September 3, 2002, Krueger sent a letter to plaintiff by certified mail. That letter stated, in part:

"Please consider this correspondence to represent notice of my client's intention to pursue a claim against the negligent tortfeasor who was responsible for causing this injury-producing accident. This notice is provided to you pursuant to ORS 742.536(1). As I have indicated to you previously, if you desire this office to assist in the pursuit of your available subrogation or lien rights of recovery, I would be pleased to undertake whatever effort is necessary to protect your company's rights of recovery. Therefore, upon your

receipt of this correspondence, would you kindly advise me of your company's election of remedies."

Plaintiff did not respond to Krueger's letter. Shortly thereafter, Krueger made a claim against Dolan on defendant's behalf for "economic damage in the form of *un-reimbursed* past medical expenses and future expenses to be determined at the time of trial," as well as noneconomic damages. (Emphasis added.) Approximately one week later, USAA settled that claim on Dolan's behalf for its policy limits of $25,000. That payment was made to defendant and Krueger. Plaintiff was not involved in that settlement.

Ten months later, in July 2003, USAA received a notice of an arbitration hearing concerning the claim for interinsurer PIP reimbursement that plaintiff had filed the previous year pursuant to ORS 742.534. USAA sent plaintiff a letter, asking it to withdraw its claim for arbitration "as this case has long been settled" and providing plaintiff with documentation of the settlement.

Plaintiff subsequently filed this action against defendant, alleging claims of breach of contract, money had and received, breach of settlement agreement, and breach of fiduciary duty, and seeking damages in the amount of $16,716.68 plus interest. Plaintiff made it clear in the trial court that its theories of recovery were *not* based on any premise that it had either a statutory lien under ORS 742.536 or a statutory subrogation claim under ORS 742.538 to the proceeds of the settlement. Rather, plaintiff acknowledged that its theories of recovery were based solely on the premise that defendant had prejudiced plaintiff's right to direct interinsurer reimbursement from USAA pursuant to ORS 742.534, with consequent monetary damage to plaintiff. Because the facts were not in dispute, the parties submitted the controversy to the court pursuant to ORCP 66. The trial court ruled for defendant on all claims, and this appeal ensued.

On appeal, plaintiff contends that the trial court erred in ruling against it on each of its claims. We first address the breach of contract claim because our analysis with respect to that claim substantially informs our consideration of the others.

Before considering the substance of the breach of contract claim, it is imperative to review the statutes governing PIP coverage and the relationship between those statutes and the provisions of plaintiff's policy. Without that context, the parties' arguments—and our resolution—are inscrutable.

ORS 742.518 to 742.544 govern PIP coverage, including insurers' recoupment of amounts paid as PIP benefits. ORS 742.520 and ORS 742.524 mandate that automobile liability policies in Oregon provide certain minimum PIP benefits. Three statutes describing different means by which insurers can recoup amounts paid as PIP benefits are central to this dispute. *First*, at all times material to this dispute, ORS 742.534—which is often referred to as the "direct reimbursement" or "interinsurer reimbursement" statute—provided:

"(1) Except as provided in ORS 742.544, every authorized motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident by a person for whom personal injury protection benefits have been furnished by another such insurer, or for whom benefits have been furnished by an authorized health insurer, shall reimburse such other insurer for the benefits it has so furnished if it has requested such reimbursement, has not given notice as provided in ORS 742.536 that it elects recovery by lien in accordance with that section and is entitled to reimbursement under this section by the terms of its policy. Reimbursement under this subsection, together with the amount paid to injured persons by the liability insurer, shall not exceed the limits of the policy issued by the insurer.

"(2) In calculating such reimbursement, the amount of benefits so furnished shall be diminished in proportion to the amount of negligence attributable to the person for whom benefits have been so furnished, and the reimbursement shall not exceed the amount of damages legally recoverable by the person.

"(3) Disputes between insurers as to such issues of liability and the amount of reimbursement required by this section shall be decided by arbitration.

"(4) Findings and awards made in such an arbitration proceeding are not admissible in any action at law or suit in equity."[3]

*Second,* ORS 742.536—which is often referred to as the "PIP lien" statute—provides:

"(1) When an authorized motor vehicle liability insurer has furnished personal injury protection benefits, or an authorized health insurer has furnished benefits, for a person injured in a motor vehicle accident, if such injured person makes claim, or institutes legal action, for damages for such injuries against any person, such injured person shall give notice of such claim or legal action to the insurer by personal service or by registered or certified mail. Service of a copy of the summons and complaint or copy of other process served in connection with such a legal action shall be sufficient notice to the insurer, in which case a return showing service of such notice shall be filed with the clerk of the court but shall not be a part of the record except to give notice.

"(2) The insurer may elect to seek reimbursement as provided in this section for benefits it has so furnished, out of any recovery under such claim or legal action, if the insurer has not been a party to an interinsurer reimbursement proceeding with respect to such benefits under ORS 742.534 and is entitled by the terms of its policy to the benefit of this section. The insurer shall give written notice of such election within 30 days from the receipt of notice or knowledge of such claim or legal action to the person making claim or instituting legal action and to the person against whom claim is made or legal action instituted, by personal service or by registered or certified mail. In the case of a legal action, a return showing service of such notice of election shall be filed with the clerk of the court but shall not be a part of the record except to give notice to the claimant and the defendant of the lien of the insurer.

---

[3] In 2007, the legislature amended ORS 742.534 to add a new provision:

"(5) If an insurer does not request reimbursement under this section for recovery of personal injury protection payments, then the insurer may only recover personal injury protection payments under the provisions of ORS 742.536 or 742.538."

Or Laws 2007, ch 392, § 1. That provision did not go into effect until January 1, 2008.

"(3) If the insurer so serves such written notice of election and, where applicable, such return is so filed:

"(a) The insurer has a lien against such cause of action for benefits it has so furnished, less the proportion, not to exceed 100 percent, of expenses, costs and attorney fees incurred by the injured person in connection with the recovery that the amount of the lien before such reduction bears to the amount of the recovery.

"(b) The injured person shall include as damages in such claim or legal action the benefits so furnished by the insurer.

"(c) In the case of a legal action, the action shall be taken in the name of the injured person.

"(4) As used in this section, 'makes claim' or 'claim' refers to a written demand made and delivered for a specific amount of damages and which meets other requirements reasonably established by the director's rule."

*Third*, ORS 742.538—which is often referred to as the "PIP subrogation" statute—provides:

"If a motor vehicle liability insurer has furnished personal injury protection benefits, or a health insurer has furnished benefits, for a person injured in a motor vehicle accident, and the interinsurer reimbursement benefit of ORS 742.534 is not available under the terms of that section, and the insurer has not elected recovery by lien as provided in ORS 742.536, and is entitled by the terms of its policy to the benefit of this section:

"(1) The insurer is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident, to the extent of such benefits furnished by the insurer less the insurer's share of expenses, costs and attorney fees incurred by the injured person in connection with such recovery.

"(2) The injured person shall hold in trust for the benefit of the insurer all such rights of recovery which the injured person has, but only to the extent of such benefits furnished.

"(3) *The injured person shall do whatever is proper to secure, and shall do nothing after loss to prejudice, such rights.*

"(4) If requested in writing by the insurer, the injured person shall take, through any representative not in conflict in interest with the injured person designated by the insurer, such action as may be necessary or appropriate to recover such benefits furnished as damages from such responsible person, such action to be taken in the name of the injured person, but only to the extent of the benefits furnished by the insurer. In the event of a recovery, the insurer shall also be reimbursed out of such recovery for the injured person's share of expenses, costs and attorney fees incurred by the insurer in connection with the recovery.

"(5) In calculating respective shares of expenses, costs and attorney fees under this section, the basis of allocation shall be the respective proportions borne to the total recovery by:

"(a) Such benefits furnished by the insurer; and

"(b) The total recovery less (a).

"(6) The injured person shall execute and deliver to the insurer such instruments and papers as may be appropriate to secure the rights and obligations of the insurer and the injured person as established by this section.

"(7) Any provisions in a motor vehicle liability insurance policy or health insurance policy giving rights to the insurer relating to subrogation or the subject matter of this section shall be construed and applied in accordance with the provisions of this section."

(Emphasis added.)

One final provision of the Insurance Code is critical to our analysis and ultimate disposition. ORS 742.021(1), which applies to the content of insurance policies generally, provides:

"Insurance policies shall contain such standard or uniform provisions as are required by the applicable provisions of the Insurance Code. However, the insurer may at its option substitute for one or more of such provisions corresponding provisions of different wording approved by the Director of the Department of Consumer and Business

Services which are in each instance not less favorable in any respect to the insured or the beneficiary."

*See generally Farmers Ins. Co. v. St. Paul Fire and Marine Ins.*, 86 Or App 367, 370, 739 P2d 605 (1987), *aff'd*, 305 Or 488, 752 P2d 1212 (1988) (interpreting predecessor statute to mean that insurance policies must "be read to mean the same thing as" the relevant provisions of the Insurance Code).

We turn to the provisions of plaintiff's policy pertaining to recovery of amounts paid as PIP benefits. The policy first states:

"We have the right to seek reimbursement for any payments we make under Part III [PIP] of this policy. We have the right to assert each of the remedies provided by Oregon Revised Statutes ORS 742.534, ORS 742.536, and ORS 742.538."

The policy then addresses interinsurer reimbursement:

"Under ORS 742.534, we may claim direct reimbursement from any liability insurer whose insured is or would be held legally liable for **damages** sustained by a person for whom **personal injury protection benefits** have been furnished."

(Boldface in original.)

The policy then includes provisions pertaining to subrogation, which, for present purposes, correspond materially to the requirements of ORS 742.538:

"If interinsurer reimbursement is not available under ORS 742.534 and we have not elected recovery by lien as outlined in ORS 742.536, we are entitled to the proceeds of any settlement or judgement [*sic*] made by the injured person, to the extent of any benefits we have paid less our share of expenses, costs, and attorney fees incurred by the injured person in connection with such recovery. The injured person shall hold in trust for our benefit all such rights of recovery which the injured person has, but only to the extent of benefits furnished. *The injured person shall do whatever is proper to secure, and shall do nothing after loss to prejudice, such rights.*

"If we so request, the injured person will take such action as is necessary or appropriate to recover benefits

paid by us. Such action will be taken in the name of the insured."

(Emphasis added.)

The policy also includes language pertaining to enforcement of a lien, which, for present purposes, materially corresponds to the requirements of ORS 742.536:

"If an injured person makes claim, or initiates legal action to recover **damages** for **bodily injury** against any person, the notice of such claim or legal action shall be given to us by personal service or by registered or certified mail. Service of a copy of the summons and complaint shall be sufficient notice to us, in which case a return showing service of such notice shall be filed with the clerk of the court, but shall not be a part of the record except to give notice.

"If we have not been a party to a reinsurer [*sic*] reimbursement proceeding with respect to benefits under ORS 742.534 we may elect to seek reimbursement for benefits we have furnished, out of any recovery under a claim or legal action filed by an injured person. We shall be given written notice of such claim or legal action.

"If we serve such written notice of election and, where applicable the return is filed:

"a. We have a lien against such action for benefits we have furnished, less the proportion, not to exceed 100% of expenses, costs and attorney fees incurred by the injured person in connection with the recovery, that the amount of the lien before such reduction bears to the total amount of the recovery.

"b. The benefits amount furnished by us shall be included as **damages** in the claim by the injured person.

"c. Any legal action shall be taken in the name of the insured."

(Boldface in original.)

Finally, and most significantly to our consideration, the policy, under the heading "Our Right to Recover Payment," provides:

"In the event of any payment under this policy we are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights *and do nothing after loss to prejudice our rights*.

"When a person has been paid **damages** by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment."

(Emphasis added; boldface in original.) That language does not correspond to the provisions prescribed in the Insurance Code except (as addressed below) to the extent that it parallels certain language pertaining to subrogation rights under ORS 742.538. In particular, there is no corresponding language, *viz.*, "shall do nothing to prejudice" the insurer's "rights," with respect to an insurer's ability to obtain inter-insurer reimbursement pursuant to ORS 742.534.

We return to the particulars of plaintiff's breach of contract claim. Plaintiff's complaint alleged breach of contract as follows:

"9.

"The terms of Plaintiff's insurance contract with Defendant Brianna M. Turner provided that Plaintiff would have a right of recovery to the extent of PIP benefits furnished, that Defendant Brianna M. Turner would hold any funds recovered from another person in trust for the benefit of Plaintiff, and that Defendant Brianna M. Turner would do nothing after the loss to prejudice Plaintiff's right to reimbursement for the PIP benefits provided.

"10.

"Defendant Brianna M. Turner has breached the foregoing terms of the insurance contract by failing to pay PIP reimbursement to Plaintiff and by prejudicing its right of direct reimbursement, to Plaintiff's damage in the sum of $16,716.68."

Before the trial court, plaintiff, as noted, was explicit that the alleged breach of contract was *solely* that defendant, because of the settlement, had prejudiced plaintiff's ability to

secure interinsurer reimbursement from USAA pursuant to ORS 742.534. In particular, plaintiff stated:

> "Plaintiff does not seek recovery out of the proceeds of the settlement, but seeks to hold [its] insured liable for prejudicing what would have been a successful direct reimbursement claim against USAA. * * * [The] defense presupposes that Plaintiff is seeking recovery out of the settlement proceeds held by Defendant Turner. That is not the case on Plaintiff's Breach of Contract Claim. Instead, Plaintiff seeks to hold Defendant Turner liable for prejudicing Plaintiff's right of direct reimbursement."

Thus, plaintiff did not contend that defendant had breached the contract by prejudicing any putative rights of subrogation under ORS 742.538[4] or by somehow frustrating any putative lien rights under ORS 742.536.

Given that posture, plaintiff's breach of contract claim is, necessarily, premised on the generic language of the policy's "Our Right to Recover Payment" section, *viz.*, that the person to whom benefits, including PIP benefits, were paid under the policy shall "do nothing after loss to prejudice our rights." Even more particularly, plaintiff's breach of contract claim depends on the premise that that language precluded defendant from acting in a way that precluded plaintiff from securing full PIP interinsurer reimbursement from USAA.[5]

The trial court properly rejected that claim for either of two alternative reasons. First, the operative language of the contract does not apply to PIP reimbursement. Second, even if that language somehow, implicitly, purported to impose an obligation on a PIP insured to maintain the insurer's ability to secure complete recovery under ORS 742.534, such a provision—which is *not* prescribed under the

---

[4] We need not, and do not, address whether, in the circumstances presented here, plaintiff's invocation of interinsurer reimbursement arbitration under ORS 742.534 precluded any resort to subrogation under ORS 742.538. *See State Farm Mutual Automobile Ins. Co. v. Hale*, 215 Or App 19, 168 P3d 285 (2007) (noting, but not deciding, question of whether an insurer who has sought interinsurer reimbursement under ORS 742.534 may later seek subrogation under ORS 742.538).

[5] At oral argument, counsel for plaintiff argued in passing that defendant had breached her "duty of good faith and fair dealing," as well as breaching the explicit terms of the contract. Because that theory of the case was neither developed in the record nor briefed on appeal, we do not consider it.

Insurance Code—would be unenforceable as "less favorable * * * to the insured" than the applicable provisions of the Oregon Insurance Code. ORS 742.021.

The pertinent policy language provides, again, as follows:"

> "In the event of any payment under this policy we are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.
>
> "When a person has been paid **damages** by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment."

(Boldface in original.) The first paragraph, including the "do nothing * * * to prejudice our rights" language pertains, in context, only to the insurer's ability to enforce "all rights of recovery of the person to whom payment was made [*viz.*, the insured] against another." That is, it requires the insured not to prejudice the insurer's ability to enforce the *insured's* rights against the *third-party tortfeasor, i.e.,* subrogation.[6] That is the contextual connotation of, and the referent for,

---

[6] In *Koch v. Spann*, 193 Or App 608, 612, 92 P3d 146, *rev den*, 337 Or 547 (2004), we described subrogation in general as follows:

"In the insurance context, subrogation permits an insurer in certain instances to recover what it has paid to its insured by, in effect, standing in the shoes of the insured and pursuing a claim against the wrongdoer. *Furrer v. Yew Creek Logging Co.*, 206 Or 382, 388, 292 P2d 499 (1956); *Safeco Ins. Co. v. Russell*, 170 Or App 636, 640, 13 P3d 519 (2000), *rev den*, 331 Or 674 (2001).

"The subrogated party acquires precisely the same rights as the party for whom it substitutes, and no more than that. *United States F. & G. Co. v. Bramwell*, 108 Or 261, 277-78, 217 P 332 (1923). Thus, in the insurance context, an insurer may pursue a subrogation claim only if its insured could have pursued the underlying claim, and the insurer's claim is subject to all of the defenses that could have been asserted if the insured had pursued the underlying claim. *See generally* 16 *Couch on Insurance* § 222:14 (3d ed 2000) (and cases cited therein) (stating principle). As a corollary of that general principle, an insurer has no right to subrogation against its own insured; the insured could not have pursued the underlying claim against himself or herself. *Id.* at § 224:1."

"those rights" and "our rights." That language—which, strikingly, corresponds to the language of the PIP subrogation statute, *see* ORS 742.538(3), and parallels language in plaintiff's policy pertaining to subrogation, *see* 219 Or App at 53—cannot pertain to protection of the insurer's ability to obtain interinsurer reimbursement because that is *not* a right "of recovery of the person to whom payment was made against another."

■ In close context with the immediately preceding paragraph of the policy, the "h[o]ld in trust" language also refers solely to an obligation and remedy pertaining to an insurer's exercise of subrogation rights under ORS 742.538 and not to any obligation to compensate the insurer for alleged loss or diminution of recovery by way of interinsurer reimbursement. Again, that language corresponds generally to some language of ORS 742.538(2)—albeit giving the insurer much greater rights than are conferred under that statute[7]—and has no reference in ORS 742.534. Thus, in context, the policy language upon which plaintiff's breach of contract claim is predicated cannot plausibly pertain to the insurer's ability to secure interinsurer reimbursement under ORS 742.534 or to remedies for the impairment of such reimbursement.

■ Further, even if that policy language bore the construction that plaintiff urges, it would be unenforceable as being less favorable to insureds than the form provisions prescribed by the Insurance Code. *See generally* ORS 742.021(1). In particular, under plaintiff's construction, the policy language would, effectively, give the insurer the benefit of the statutory subrogation (or lien) remedies, without complying with the procedural requirements of those statutes, *e.g.*, ORS 742.536(1), (2); ORS 742.538(4), and without sharing in the

---

[7] As we amplify immediately below, although the policy language purports to require the insured to reimburse the insurer to the "full extent of our payment," the PIP subrogation statute includes no such "full reimbursement" guarantee (and neither does the PIP lien statute). Rather, any recovery by the insurer is reduced by "the insurer's share of expenses, costs and attorney fees incurred by the injured person in connection with such recovery." ORS 742.538(1); *see also* ORS 742.536(3)(a) (insurer has a lien against third-party cause of action "for benefits it has so furnished, less the proportion, not to exceed 100 percent, of expenses, costs and attorney fees incurred by the injured person in connection with the recovery that the amount of the lien before such reduction bears to the amount of the recovery").

transactional costs of litigation, as prescribed by those stat-
utes, *e.g.*, ORS 742.536(3)(a); ORS 742.538(1), (4), (5).

As a practical matter, ORS 742.534 may provide an
inexpensive way for two insurers to resolve which is ulti-
mately responsible for the amount paid to a PIP claimant.
However, in some situations, such as when the injured
insured is seeking damages from a tortfeasor beyond what he
or she has recovered in PIP benefits from his or her own
insurer, for example, ORS 742.534 does fully address how
PIP reimbursement will work. That is, in some situations,
the legislature has contemplated that an injured insured will
need to pursue a claim against a tortfeasor, as set forth in
ORS 742.536 and ORS 742.538. The legislature has also
made provision in those two statutes for the injured insured
to protect the PIP insurer's interest in recovering its PIP pay-
ments, but the PIP insurer must bear its share "of expenses,
costs and attorney fees" incurred by its injured insured. ORS
742.536(3)(a); ORS 742.538(4), (5). The PIP insurer also must
make it clear to its insured that it *expects* its insured to
protect its interests in recovering PIP payments. ORS
742.536(3); ORS 742.538(4).[8]

If plaintiff is correct in the present case that it can
recover its PIP payments from its insured based on a non-
statutory breach of contract theory, then it would be able to
obtain a type of nonstatutory subrogation without having
contributed to its insured's expenses, costs, and attorney fees,
and without having requested that its insured protect its
interests. The trial court correctly concluded that defendant
did not breach its contract with plaintiff by reaching a settle-
ment with USAA, given that it is undisputed that plaintiff
did not utilize the means set forth in ORS 742.536 or ORS
742.538 to obligate defendant to protect plaintiff's interests
in obtaining PIP reimbursement.

██ Plaintiff's remaining claims do not require extended
discussion. Plaintiff's claim for money had and received is

---

[8] This point is important because, in cases such as the present one, the injured
insured specifically has sought damages from the tortfeasor *excluding* the amount
that the injured insured has already received in PIP payments. *See* 219 Or App at
47-48.

based on the facts that defendant had received the settlement from USAA and had not reimbursed plaintiff in the amount of $16,716.68. "Recovery on a theory of money had and received is based on a promise implied by law and on the equitable principle that one who has been unjustly enriched at the expense of another is required to make restitution." *C. A. M. Concepts, Inc. v. Gwyn*, 206 Or App 122, 128, 136 P3d 60 (2006).

Plaintiff's argument appears to be premised on its assumption that defendant has achieved a "double recovery," first of PIP payments from plaintiff, then of *the same damages* in its settlement with USAA. Defendant responds by noting that its claim against USAA's insured, Dolan, was for *unreimbursed* expenses, *see* 219 Or App at 48, and, thus, posits that the settlement did not include damages for which she had already received PIP benefits.

■ The problem with plaintiff's "double recovery" premise is that, by forgoing its statutory remedies under ORS 742.536 or ORS 742.538 that allow for litigation of what the injured insured's actual damages were, plaintiff has not established that defendant has been unjustly enriched by a double recovery. Plaintiff asserts on appeal that defendant has "failed to prove that the $25,000.00 that she received from USAA in settlement was not compensation for damages for which she had already received PIP payments." However, as proponent of the money had and received claim, *plaintiff* had the burden of proving its claim; plaintiff cannot prevail simply by asserting that defendant failed to disprove that claim.

■ Plaintiff next contends that it is a third-party beneficiary under the settlement agreement between defendant and USAA, and that defendant breached that settlement agreement by failing to reimburse plaintiff in the amount of the PIP payments that plaintiff had made to defendant. Defendant responds that the third-party beneficiary claim fails because the settlement agreement cannot be construed as having as its " 'primary object and purpose the benefit of' " plaintiff. *Waterway Terminals v. P. S. Lord*, 242 Or 1, 30, 406 P2d 556 (1965) (quoting *Parker v. Jeffery*, 26 Or 186, 189, 37 P 712 (1894)).

We reject plaintiff's argument for two reasons. First, plaintiff's one-paragraph argument in its opening brief pertaining to the third-party beneficiary claim is cursory and conclusory, without reference to the elements of such a claim, much less how its evidence necessarily satisfied those elements. Second, in all events, the circumstances of the settlement between defendant and USAA—and, particularly, the facts that the settlement agreement included no reference to plaintiff and that defendant had previously rejected USAA's offer to make the settlement check jointly payable to defendant and plaintiff—contradict plaintiff's assertion that it was an intended beneficiary of that settlement and corroborates the trial court's rejection of the third-party beneficiary claim.

■ Finally, plaintiff asserts that defendant breached a fiduciary duty to hold in trust for plaintiff any third-party recovery defendant obtained. That claim rests on plaintiff's assertion, discussed above in conjunction with its contract claim, that the insurance contract gave plaintiff superior rights to recovery of PIP benefits from its insured than those contemplated by the PIP reimbursement statutes. Because we have construed the contract in accordance with those statutes, we must conclude that defendant's "fiduciary" duties—assuming, without deciding, they can be so characterized—are coextensive with defendant's duties under ORS 742.536 and ORS 742.538, to protect its insurer's interests *if* the insurer takes the appropriate steps under one of those statutes to assert lien or subrogation rights. In the absence of the insurer taking appropriate steps to assert its rights—and plaintiff has conceded that it did not proceed under either ORS 742.536 or ORS 742.538 in the present case—the insured has no "fiduciary" duty to hold any recovery in trust for the insurer.

The trial court properly rejected plaintiff's claims and entered judgment in defendant's favor.

Affirmed.