Argued and submitted January 9, reversed September 12, 2007

# STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
*Plaintiff-Respondent,*

*v.*

## Randall Cecil HALE,
*Defendant-Appellant.*

### Jackson County Circuit Court
051083E3; A130967

168 P3d 285

Joel S. DeVore argued the cause for appellant. On the opening brief were David A. deVilleneuve and Shlesinger & deVilleneuve Attorneys, P.C. With them on the reply brief was Luvaas Cobb.

Billy M. Sime argued the cause for respondent. With him on the brief was Parks, Bauer, Sime, Winkler & Fernety, LLP.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Plaintiff State Farm Mutual Automobile Insurance Company initiated this action for declaratory judgment, seeking a declaration that defendant, its insured who had been injured in an auto accident, was required pursuant to ORS 742.538 to reimburse plaintiff for personal injury protection (PIP) benefits after defendant received a settlement from another insurer. The trial court agreed with plaintiff and entered judgment to that effect. Defendant appeals. For the reasons set forth below, we reverse.

The pertinent facts as found by the trial court are not in dispute. In August 2002, defendant was injured in an automobile accident caused by Knotts. Plaintiff paid defendant $13,594.92 in PIP benefits. Knotts had an insurance policy through Farmers Insurance Company of Oregon (Farmers), which had a $25,000 "per person" bodily injury liability limit. In January 2003, defendant's attorney wrote to plaintiff, advising it of defendant's intention of filing a claim against Knotts and, citing ORS 742.536,[1] stating "please advise this office within thirty (30) days from the date of this letter which

---

[1] ORS 742.536 provides, in pertinent part:

"(1) When an authorized motor vehicle liability insurer has furnished personal injury protection benefits * * * for a person injured in a motor vehicle accident, if such injured person makes claim, or institutes legal action, for damages for such injuries against any person, such injured person shall give notice of such claim or legal action to the insurer[.] * * *

"(2) The insurer may elect to seek reimbursement as provided in this section for benefits it has so furnished, out of any recovery under such claim or legal action, if the insurer has not been a party to an interinsurer reimbursement proceeding with respect to such benefits under ORS 742.534 and is entitled by the terms of its policy to the benefit of this section. The insurer shall give written notice of such election within 30 days from the receipt of notice or knowledge of such claim or legal action to the person making claim or instituting legal action and to the person against whom claim is made or legal action instituted[.]"

If an insurer elects to pursue recovery under ORS 742.536, the insured is required to include as damages in such a claim the amount of benefits received from the insurer, and the insurer

"has a lien against such cause of action for benefits it has so furnished, less the proportion, not to exceed 100 percent, of expenses, costs and attorney fees incurred by the injured person in connection with the recovery that the amount of the lien before such reduction bears to the amount of the recovery."

ORS 742.536(3)(a).

It is undisputed that, in the present case, plaintiff did not elect to pursue recovery of the PIP payments pursuant to ORS 742.536.

method of reimbursement of PIP benefits you are choosing." Defendant also filed a claim for underinsured motorist benefits (UIM) with plaintiff. In July 2003, plaintiff made a demand on Farmers, pursuant to the interinsurer reimbursement provisions of ORS 742.534,[2] for reimbursement of the PIP benefits it had paid to defendant. In August 2003, plaintiff notified defendant that it was seeking reimbursement of the PIP benefits directly from Farmers, and that plaintiff was "requesting that you take no action whatsoever in connection with recovery of State Farm's PIP reimbursement."

In June 2004, plaintiff sought binding arbitration with Farmers to resolve the issue of PIP reimbursement. At that time, plaintiff again instructed defendant to take no action with respect to the PIP reimbursement. In July 2004, Farmers made an offer to defendant and plaintiff to settle with both for its policy limits of $25,000. On July 22, 2004, defendant rejected the offer and counteroffered that he would accept a settlement of $25,000 "separate from the PIP obligations." On that date, Farmers sent the settlement check to its attorney with instructions to secure a release from defendant, further noting that Farmers was "confirming with State Farm that they will waive their PIP subrogation and withdraw the arbitration contentions." On July 23, 2004, Farmers wrote to plaintiff indicating that it had tendered a check to defendant for $25,000 and confirming "our agreement that you authorized this settlement and will in turn withdraw your arbitration contentions." On July 27, 2004, Farmers' attorney sent defendant the check for $25,000 "representing full and final settlement of the above referenced matter" and a release to be signed. On July 30, 2004, plaintiff withdrew its arbitration request.

---

[2] ORS 742.534(1) provides:

"Except as provided in ORS 742.544, every authorized motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident by a person for whom personal injury protection benefits have been furnished by another such insurer, or for whom benefits have been furnished by an authorized health insurer, shall reimburse such other insurer for the benefits it has so furnished if it has requested such reimbursement, has not given notice as provided in ORS 742.536 that it elects recovery by lien in accordance with that section and is entitled to reimbursement under this section by the terms of its policy. Reimbursement under this subsection, together with the amount paid to injured persons by the liability insurer, shall not exceed the limits of the policy issued by the insurer."

On August 10, 2004, plaintiff wrote to defendant indicating that it approved the settlement with Farmers "provided State Farm receives our PIP subrogation in the amount of $13,594.92." Defendant responded that plaintiff could not condition its consent to the settlement in such a manner. Plaintiff replied that it could recover from defendant's settlement pursuant to ORS 742.538.

Ultimately, defendant finalized his settlement with Farmers by signing the release it had provided and by cashing the check for $25,000 in early October, and plaintiff and defendant agreed that plaintiff would settle defendant's UIM claim "for our remaining limit of $25,000" with the condition that the PIP amount "be held in trust until the dispute regarding our right to recover from the underlying limit has been resolved." Defendant accepted that offer and placed the disputed PIP amount in trust. The present litigation ensued to determine whether plaintiff or defendant is entitled to the $13,594.92.

In this action for declaratory relief, plaintiff asserted that it is entitled to subrogation pursuant to ORS 742.538. Defendant responded that, under ORS 742.538, subrogation is available only when "the interinsurer reimbursement benefit of ORS 742.534 is not available under the terms of that section," and that plaintiff not only could pursue interinsurer reimbursement under ORS 742.534, but in fact had done so up to the point that it had withdrawn its arbitration request. Plaintiff, in turn, argued that interinsurer reimbursement became "not available" for purposes of ORS 742.534 when Farmers offered the payment to defendant for its policy limits.

The trial court ultimately agreed with plaintiff. It held that once the limits of the Farmers policy had been tendered to defendant, the interinsurer reimbursement benefit of ORS 742.534 was no longer available. The court further held that plaintiff had timely asserted its rights to subrogation under ORS 734.538 because the settlement became effective after plaintiff had notified defendant of its intention to assert its right to subrogation under that statute.

Defendant appeals, arguing that the trial court misconstrued ORS 734.538. Defendant's primary argument is

that the trial court erred as a matter of law in construing the "interinsurer reimbursement benefit of ORS 742.534 is not available" language in ORS 742.538 to apply in situations in which the second insurer has already paid the policy limits to a party other than the insurer that has paid PIP benefits. Defendant also asserts that, even if the court was generally correct that the "interinsurer reimbursement benefit * * * is not available" provision could include circumstances in which policy limits had been exhausted, it erred in concluding that that was the circumstance here, given that, at the time plaintiff declared its intention to seek reimbursement under ORS 742.538 and drop its efforts to recover directly from Farmers under ORS 742.534, defendant had not yet settled with Farmers.

■    As set forth below, we need not reach defendant's broader argument—that an insurer may not proceed under ORS 742.538 when the other insurer has paid its policy limits directly to an insured because interinsurer reimbursement under ORS 742.534 remains "available"—because we conclude that defendant is correct on the narrower grounds that he asserts. That is, we agree with defendant that, under the circumstances of this case, plaintiff did not properly assert its subrogation rights under ORS 742.538, because at the time it attempted to do so, no settlement had occurred, and, thus, interinsurer reimbursement remained "available" pursuant to ORS 742.534, rendering subrogation under ORS 742.538 unavailable.

In order to explain our conclusion, we must first describe the relevant portions of the PIP statutory scheme. PIP coverage, which is, in essence, a type of no-fault insurance, is mandated by Oregon law to be included in any motor vehicle liability policy. ORS 742.520. As noted above, the PIP statutory scheme contains various provisions through which an insurer who pays out PIP benefits may be reimbursed if the injured insured receives other compensation for the injuries.

We recently described the statutory scheme and some of its history in *Gaucin v. Farmers Ins. Co.*, 209 Or App 99, 146 P3d 370 (2006), in which we interpreted ORS 742.544(1), which provides, in pertinent part, that an insurer

who provides PIP benefits is entitled to reimbursement of PIP payments "only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 31.710 suffered by" the insured. The issue in *Gaucin* was whether ORS 742.544 provided an independent source for an insurer to recover PIP payments, apart from ORS 742.534, ORS 742.536, and ORS 742.538. In holding that it did not, we explained the evolution of those statutes:

> "In order to understand the purpose of ORS 742.544, it is useful to note certain legal developments that led to its drafting. At the time ORS 742.544 was enacted (as now), ORS 742.542 provided that an insured's claim for UM could be reduced by the amount of PIP recovery, but where the insured's damages exceed the sum of UM and PIP, the PIP insured could 'stack' the benefits in order to make a fuller recovery.
>
> "However, before ORS 742.544 was enacted, when a PIP insured was injured by an *insured* tortfeasor, Oregon law enabled PIP insurers to demand PIP reimbursement from the insured, even when the recovery from the tortfeasor did not make the PIP insured whole. *Babb v. Mid-Century Ins. Co.*, 110 Or App 67, 821 P2d 424 (1991), *rev den*, 313 Or 209 (1992) (construing ORS 742.534 to produce that result).
>
> "Proponents of the new statute aimed to permit PIP insureds to retain PIP benefits in addition to payments from the tortfeasor, where the PIP insured's losses exceeded available benefits. ORS 742.544 began as Senate Bill (SB) 366 (1993). The author of SB 366, Senator Karsten Rasmussen, explained that the new provision would guarantee that any PIP insured who was injured by an uninsured motorist would not be required to reimburse the PIP insurer unless the insured received compensation for his or her economic damages. Only surplus PIP benefits would become subject to reclamation:
>
> > "'[F]rom a simple policy standpoint, it ought to be the policy of the state * * * that if you pay your PIP benefit, you ought to receive that benefit first * * *. I suspect that most people would be very surprised to find out that when they have purchased that benefit they stand number two in line for receiving it.'
>
> "Tape Recording, Senate Floor Session, SB 366, Apr 29, 1993, Tape 61, Side A (statement of Sen Rasmussen). Thus,

the purpose of the bill was to prioritize the PIP insured, allowing reimbursement only after the insured received compensation. Senator Rasmussen did not characterize the bill as yet another independent PIP reimbursement authorization for insurers."

*Gaucin*, 209 Or App at 106-07 (emphasis and ellipses in original). We concluded from the legislative history of ORS 742.544 that it "was designed to assign the priority of claims to PIP benefits to favor remunerating the insured to the amount of his or her economic damages, rather than to assist PIP insurers in their own reimbursement," and that it legislatively overruled our decision in *Babb*. *Gaucin*, 209 Or App at 108. That statute, we determined, was meant "to allow PIP insureds to retain PIP benefits in addition to payments from the tortfeasor, up to the PIP insured's economic losses, where PIP reimbursement was otherwise authorized." *Id.* at 109.

Although the issue in *Gaucin* was different from the issue in this case, the statutory context is the same, and our explanation of the purpose of the PIP reimbursement scheme is highly relevant to the question presented here. That is, in *Gaucin*, we interpreted the group of statutes from ORS 742.534 through 742.544, concerning PIP reimbursement, to be designed to allow a PIP insurer to be reimbursed for its payments, but only to the extent that that payment, combined with other recoveries, had exceeded the insured's economic losses. Were we to interpret ORS 742.538 in the manner that the trial court did in this case, it would allow PIP insurers to circumvent ORS 742.544 and, in essence, resurrect *Babb* to give the PIP insurer higher priority than the insured to any recovery from another liability insurer. We believe that ORS 742.538, when read in context with the remaining PIP reimbursement statutes and in conjunction with our case law interpreting those statutes, is meant to be available to a PIP insurer only when that insurer has no option to proceed under the interinsurer reimbursement process described in ORS 742.534 and has not asserted a lien pursuant to ORS 742.536.

The relevant text of ORS 742.538 is that PIP reimbursement may be recovered pursuant to that statute if three conditions are met: (1) that the PIP insurer "is entitled by the

terms of its policy" to such benefits; (2) that the PIP insurer "has not elected recovery by lien as provided in ORS 742.536"; and (3) that "the interinsurer reimbursement benefit of ORS 742.534 *is not available under the terms of that section*." (Emphasis added.) Thus, the question presented is whether the interinsurer reimbursement benefit of ORS 742.534 was "not available under the terms of that section" to plaintiff in these circumstances.

ORS 742.534(1) provides:

"Except as provided in ORS 742.544, every authorized motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident by a person for whom personal injury protection benefits have been furnished by another such insurer * * * shall reimburse such other insurer for the benefits it has so furnished if it has requested such reimbursement, has not given notice as provided in ORS 742.536 that it elects recovery by lien in accordance with that section and is entitled to reimbursement under this section by the terms of its policy. Reimbursement under this subsection, together with the amount paid to injured persons by the liability insurer, shall not exceed the limits of the policy issued by the insurer."

Thus, like ORS 742.538, ORS 742.534 allows an insurer to recover its PIP payments if three conditions are met: (1) the PIP insurer is "entitled to reimbursement under this section by the terms of its policy"; (2) the PIP insurer has "not given notice as provided in ORS 742.536 that it elects recovery by lien in accordance with that section"; and (3) the PIP insurer "has requested such reimbursement." ORS 742.534(1).

It is undisputed that those three conditions were met in this case. First, plaintiff was entitled to proceed under ORS 742.534 pursuant to the terms of its policy (and in fact notified defendant it would do so). Second, plaintiff had not given notice that it would elect recovery via a lien pursuant to ORS 742.536. *See* 215 Or App at 21 n 1. Finally, plaintiff did, in fact "request[ ] such reimbursement" from Farmers. Thus, if those three conditions constitute the relevant "terms of" ORS 742.534 that are referenced in ORS 742.538, then the

trial court was incorrect in concluding that interinsurer benefits were "not available under the terms of" ORS 742.534.

Plaintiff, however, posits that the relevant "term" of ORS 742.534 that renders the interinsurer benefit "unavailable" is the final sentence of ORS 742.534(1): "Reimbursement under this subsection, together with the amount paid to injured persons by the liability insurer, shall not exceed the limits of the policy issued by the insurer." Plaintiff argues that reimbursement was not available to it under that "term" because Farmers, having tendered the limits of its policy directly to defendant, was not required to pay plaintiff as well, because that would exceed the limits of the Farmers policy.

As an initial matter, we note that, if plaintiff is correct in its interpretation, in situations such as this involving multiple insurers, the insurers could almost invariably avoid the limitation on PIP reimbursement found in ORS 742.544 and prevent an insured from "stacking" benefits in the manner described in *Gaucin*. But here we need not decide the rather provocative question of whether the legislature could possibly have intended such a result. That is so because, even if plaintiff is correct (in the abstract) that exhaustion of a liability policy's limits renders interinsurer reimbursement under ORS 742.534 "not available" and allows an insurer to proceed against its insured under ORS 742.538, that is not what happened here.[3] In this case, the sequence of events establishes that the interinsurer reimbursement benefit under ORS 742.534 *was* "available" to plaintiff.

We reiterate the operative facts: Plaintiff paid defendant PIP benefits. Defendant proceeded against Farmers' insured to recover under Knotts's liability policy, and also sought UIM coverage under his own policy with plaintiff. Plaintiff sought interinsurer reimbursement of the PIP benefits from Farmers. The limits of the Farmers policy were $25,000, and Farmers offered to settle with defendant for

---

[3] Plaintiff invokes *Farmers Ins. Co. v. American Fire & Casualty*, 117 Or App 347, 844 P2d 235 (1992), *rev den*, 315 Or 643 (1993), as support for its position. In that case, however, we merely held that an insurer who had paid its policy limits directly to an injured insured, rather than providing PIP reimbursement to the injured insured's PIP carrier, was not required to exceed its policy limits and make an additional payment to the PIP carrier. No issue was presented in that case as to whether, or how, the PIP carrier might be able to recover from its own insured.

that amount, with the agreement that plaintiff would drop its claim for interinsurer reimbursement, which plaintiff did. Under ORS 742.504(4)(a), defendant was required to—and did—get plaintiff's approval before settling with Farmers. Thus, at the time plaintiff dropped its efforts to seek reimbursement of PIP benefits under ORS 734.534 and announced its intention to pursue reimbursement from defendant pursuant to ORS 734.538, no settlement had yet occurred. One had been proposed—but whether defendant's claim against Farmers could be settled on those proposed terms depended entirely on plaintiff: Farmers was willing to settle only if plaintiff dropped its ORS 742.534 claim for interinsurer reimbursement, and defendant understood that he needed plaintiff's consent to the settlement in order to proceed with his UIM claim.

■      In short, plaintiff's explanation for why interinsurer reimbursement was "not available" under the terms of ORS 742.534 is simply that plaintiff *chose* to drop its claim for interinsurer reimbursement and allow the settlement to proceed. Had plaintiff not dropped its claim against Farmers pursuant to ORS 742.534 and not ultimately agreed to the settlement, it may well have recovered its PIP payments, at least to any extent that defendant's economic losses had been covered by other sources.[4] Plaintiff, having abandoned its pursuit of recovery under ORS 742.534, cannot simply switch over to ORS 742.538. To allow it to do so would be to disregard the legislature's clear intent that, to the extent possible, insurers in this situation should utilize ORS 742.534 or pursue a lien under ORS 742.536, and resort to ORS 742.538 only when the preferred method is "not available."

In sum, at the time plaintiff attempted to assert its subrogation rights against defendant under ORS 742.538, interinsurer reimbursement remained "available" under ORS 742.534. Consequently, the trial court erred in determining that plaintiff was entitled to subrogation under ORS 742.538.

Reversed.

---

[4] Given the manner in which the settlements described above occurred, plaintiff appears never to have actually determined whether defendant's recovery exceeded his economic losses.