PROVIDENCE HEALTH PLAN, an
Oregon nonprofit corporation,
Plaintiff,

v.

Linda L. CHARRIERE, Defendant.

No. CV–08–872–HU.

United States District Court,
D. Oregon.

Oct. 13, 2009.

Arden J. Olson, John A. Riherd, Harrang Long Gary Rudnick P.C., Portland, OR, for Plaintiff.

Paul H. Krueger, Paul Krueger Law Firm, PC, Portland, OR, for Defendant Charriere.

## OPINION & ORDER

HUBEL, United States Magistrate Judge:

Plaintiff Providence Health Plan brings this ERISA and breach of contract action against defendant Linda Charriere. Both parties move for summary judgment.

The parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant each motion in part, and deny each motion in part.

## BACKGROUND

Plaintiff is an Oregon non-profit corporation, licensed by the State of Oregon as a health care service contractor under Oregon Revised Statutes Chapter 750.

Defendant was injured in a car accident on July 11, 2007. The operator of the other car, Michael Arthur, was at fault. Defendant was a member of plaintiff at the time of the accident, having obtained coverage with plaintiff through her husband's employer's group plan provided through the Harrison Electrical Workers Trust.

The group health contract provided by plaintiff is an ERISA health and welfare plan. Plaintiff is a fiduciary of the plan as that term is used in ERISA.

Plaintiff has paid $243,863.85 for defendant's medical and hospital expenses associated with this accident. Defendant has recovered $100,000 from State Farm Insurance, representing $50,000 from State Farm in underinsured motorist coverage (UIM) under defendant's policy with State Farm, and $50,000 from State Farm in third party liability coverage insurance because State Farm was Arthur's insurer.

The funds paid to defendant by State Farm have been deposited in trust by defendant's attorney. Defendant has failed to repay plaintiff any amount either directly or from the settlement funds received and deposited with her attorney.

On October 29, 2007, plaintiff, through its representative Kathleen Warren, wrote to State Farm regarding Arthur. Warren Depo. Exh. 101, attached as unnumbered exhibit to Deft's CSF in Sup. of Deft's MSJ. There, Warren notified State Farm that Oregon Revised Statute § (O.R.S.) 742.534 required an authorized motor vehicle liability insurer, whose insured is or would be held legally liable for damages, to reimburse the health insurer directly for the benefits the health insurer has fur-

nished, if requested to do so by the health insurer. *Id.*

Warren stated that the letter "will serve as Providence Health Plan's demand under that statute for direct insurer to insurer reimbursement." *Id.* Warren informed State Farm of the amount of the "lien" at that time, and included an itemized ledger. *Id.* She noted that if State Farm intended to dispute liability or medical causation, to please advise her as soon as possible. *Id.* She also requested that she be contacted before State Farm made any final settlement agreement so that she could provide a final summary of any payments made for the injury. *Id.* Finally, to ensure that plaintiff's interest was protected, Warren requested that State Farm issue a separate draft to plaintiff for the payments plaintiff had made. *Id.*

On December 31, 2007, State Farm claim representative Lisa McAlpine wrote to defendant regarding Arthur. Exh. A to Deft's Resp. to Pltf's CSF. McAlpine stated that to date, State Farm had not concluded defendant's bodily injury claim, and thus, State Farm was unable to "issue our settlement draft for our insured's liability policy limits of $50,000" because it was waiting for additional information from plaintiff. *Id.* McAlpine stated that a telephone message was left on December 31, 2007, "for a status on behalf of the lien that has been filed against our insured's Liability Coverage" for Providence Health Plan payments. *Id.* She then stated that a release was sent to defendant on September 4, 2007, for the limit offer of $50,000. *Id.* However, the letter continued, until the lien information was concluded, any drafts payable under State Farm's liability policy would also include the medical providers who had filed those liens. *Id.*

In concluding, McAlpine told defendant that State Farm understood that defendant was waiting for the conclusion of defendant's health carrier's decision on any possible reduction of its lien and thus, State Farm would continue its follow-up with the health carrier for "a status" of the matter. *Id.*

In a second letter from plaintiff to State Farm dated February 5, 2008, Warren referred to State Farm's insured Linda Charriere, and noted the claim for UIM. Warren Depo. Exh. 104, attached as unnumbered exhibit to Deft's CSF in Sup. of Deft's MSJ. There, Warren stated that the letter served as plaintiff's demand under O.R.S. 742.534 for direct insurer-to-insurer reimbursement for the underinsured claim in the amount of $50,000. *Id.* She asked that a check be issued to plaintiff for a portion of the $50,000 underinsured claim, in the amount of $44,000. *Id.* She enclosed a self-addressed stamped envelope and asked that it be sent to Warren's attention. *Id.* She also asked that a separate $6,000 check be sent directly to defendant. *Id.* She noted that the two amounts should exhaust the limits of the underinsured claim. *Id.*

On the same date, February 5, 2008, Warren wrote to defendant to tell her that according to information received from defendant's physicians, defendant's injuries had healed and that the only noted future concern was a possible limit of activity and limit in walking speed. Warren Depo. Exh. 103, attached as unnumbered exhibit to Deft's CSF in Sup. of Deft's MSJ. Warren told defendant that she wanted to provide defendant with details of plaintiff's proposed offer of settlement of its subrogation lien with State Farm. *Id.* Warren explained that State Farm had $50,000 in a bodily injury policy with insured Arthur, and $50,000 in underinsurance with insured defendant. Warren then told defendant that plaintiff's current medical lien was $242,018.15, which exceeded the $100,000 available under the State Farm policies. *Id.* She asserted that it was

plaintiff's right to keep the entire $100,000 which would allow plaintiff to recover a portion of its loss, leaving plaintiff with $142,018.15 in losses. *Id.*

Warren further wrote that plaintiff had no obligation to allow defendant to recover any out of pocket losses. However, plaintiff was going to allow defendant $6,000 to offset certain expenses for gasoline, a ramp, and pharmacy co-payments. *Id.* Warren informed defendant that because plaintiff's policy "language has an exclusion for future related medical claims[,] an exception will be made to allow for continued care and medical treatment related to injuries sustained from your motor vehicle accident of 7/11/07." *Id.* Warren then stated that "[w]e are in the process of subrogation settlement with State Farm and will ask them to issue and mail directly to you a separate check in the amount of $6,000." *Id.*

In her declaration submitted in support of plaintiff's motion for summary judgment, Warren states that defendant asserted a claim against Arthur. Warren Declr. at ¶ 8. There is no information about when that claim was made. There is no evidence in the record that defendant ever notified plaintiff that defendant was making a claim, or instituting a legal action, as a result of the accident.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In re Agricultural Research and Tech. Group,* 916 F.2d 528, 534 (9th Cir.1990); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

## DISCUSSION

I.  Relevant Portions of the Plan

Plaintiff cites to four separate provisions in the plan supporting its right to recover

the monies paid by State Farm to defendant: Sections 8.4, 8.4.1, 8.4.2, and 8.4.3. They provide as follows:

### 8.4 *THIRD–PARTY LIABILITY/SUBROGATION*

The following provisions will apply when *You* have received *Services* for a condition for which one or more third parties may be responsible. "Third party" means any person other than *You* (the first party to this *Contract*), and *Providence Health Plan* (the second party), and includes any insurance carrier providing liability or other coverage potentially available to *You*. For example, uninsured or underinsured motorist coverage, whether under *Your* policy or not, is subject to recovery by *Us* as a third-party recovery. Failure by *You* to comply with the terms of this section will be a basis for *Us* to deny any claims for benefits arising from the condition or to terminate *Your* coverage under this *Group Contract* as specified in section 10.2. In addition, *You* must execute and deliver to *Us* or other parties any document requested by *Us* which may be appropriate to secure the rights and obligations of *You* and *Providence Health Plan* under these provisions.

### 8.4.1 Third–Party Liability/Subrogation and How it Affects You

Third party liability refers to claims that are the responsibility of someone besides *Providence Health Plan* or *You*. Examples of third-party liability are motor vehicle accidents, workplace accidents, injury or illness, or any other situation involving injury or illness, including wrongful death, in which *You* or *Your* heirs, beneficiaries or relatives have a basis to bring a lawsuit or to make a claim for compensation against any person or for which *You* or *Your* heirs, beneficiaries or relatives may receive a settlement. Once it has been established that the third party is responsible to pay and is capable of paying for the expenses for the *Services* caused by that third party, *We* will not provide benefits for the *Services* arising from the condition caused by that third party. If *We* make claim payments on *Your* behalf for which a third party is responsible, *We* are entitled to be repaid for those payments out of any recovery from the third party. *We* will request reimbursement from *You* or *Your* heirs, beneficiaries or relatives to the extent the third party does not pay *Us* directly, and *We* may request refunds from the medical providers who treated *You*, in which case those providers will bill *You* for their *Services*. "Subrogation" means that *We* may collect directly from the third party to the extent *We* have paid on *Your* behalf for third-party liabilities. Because *We* have paid for *Your* injuries, *We*, rather than *You*, are entitled to recover those expenses.

. . .

### 8.4.2 Proceeds of Settlement or Recovery

To the fullest extent permitted by law, *We* are entitled to the proceeds of any settlement or any judgment that results in a recovery from a third party, whether or not responsibility is accepted or denied by the third-party for the condition. *We* are entitled up to the full value of the benefits provided by *Us* for the condition, calculated using *Our UCR* charges for such *Services*, less the *Member's* out of pocket expenses. Prior to accepting any settlement of *Your* claim against the third party, *You* must notify *Us* in writing of any terms or conditions offered in settlement and shall notify the third party of *Our* interest in the settlement established by this provision.

*You* must cooperate fully with *Us* in recovering amounts paid by *Us*. If *You* seek damages against the third party for the condition and retain an attorney or

other agent for representation in the matter, *You* must agree to require *Your* attorney or agent to reimburse *Us* directly from the settlement or recovery an amount equal to the total amount of benefits paid.

*You* must complete *Our* subrogation trust agreement by which *You* and/or *Your* attorney or agent agrees to reimburse *Us* directly from the funds of the settlement or recovery. *We* will withhold benefits for *Your* condition until a signed copy of this agreement is delivered to *Us*. The agreement must remain in effect and *We* will withhold payment of benefits if, at any time, *Your* authorization or the agreement should be revoked. While this document is not necessary for *Us* to exercise *Our* rights to subrogation, it serves as a reminder and confirmation of *Our* rights to each of the parties involved.

To the maximum extent permitted by law, *We* are subrogated to *Your* rights against any third party who is responsible for the condition, have the right to sue any such third party in *Your* name, and have a security interest in and lien upon any recovery to the extent of the amount of benefits paid by *Us* and for *Our* expenses in obtaining a recovery. If *You* should either decline to pursue a claim against a third party that *We* believe is warranted or refuse to cooperate with *Us* in any third party claim that you do pursue, *We* have the right to pursue such claim directly, including commencing a legal action against such third party or intervening in any action that *You* have commenced.

### 8.4.3. Suspension of Benefits and Reimbursement

After *You* have received proceeds of a settlement or recovery from a third party, *You* are responsible for payment of all medical expenses for the continuing treatment of the illness or injury that *Providence Health Plan* would other-

wise be required to pay under this *Group Contract* until all proceeds from the settlement or recovery have been exhausted.

If *You* continue to receive medical treatment for the condition after obtaining a settlement or recovery from one (1) or more third parties, *We* are not required to provide coverage for continuing treatment until *You* prove to *Our* satisfaction that the total cost of the treatment is more than the amount received in settlement or recovered from the third party, after deducting the cost of obtaining the settlement or recovery. *We* will only cover the amount by which the total cost of benefits that would otherwise be covered under this *Group Contract,* calculated using *Our UCR* charges for such *Services,* exceeds the amount received in settlement or recovery from the third party. *We* are entitled to reimbursement from any settlement or recovery from any third party even if the total amount of such settlement or recovery does not fully compensate *You* for other damages, including lost wages or pain and suffering. Any settlement arising out of an injury or illness covered by this *Group Contract* will be deemed first to compensate *You* for *Your* medical expenses, regardless of any allocation of proceeds in any settlement document that *We* have not approved in advance. In no event shall the amount reimbursed to *Us* be less than the maximum permitted by law.

Exh. 1 to Compl. at pp. 44–46.

### II. ERISA Claim

ERISA authorizes fiduciaries to bring suit in federal court for "appropriate equitable relief" to remedy violations of a plan or to enforce its provisions. 29 U.S.C. § 1132(a)(3)(B). In *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002),

the Supreme Court explained that "equitable relief," as referred to in this portion of the statute, "must mean something less than all relief." *Id.* at 209, 122 S.Ct. 708 (internal quotation and emphasis omitted). The Court noted that it had previously held that the term "equitable relief" referred to "those categories of relief that were typically available in equity." *Id.* at 210, 122 S.Ct. 708 (internal quotation and emphasis omitted).

■ Here, plaintiff seeks the imposition of a constructive trust against defendant. Compl. at ¶¶ 20 (incorporating ¶¶ 1–19), 21. *Great–West* recognizes this as an allowable claim under section 1132(a)(3)(B):

> In contrast, a plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.... A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of an equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.

*Id.* at 213, 122 S.Ct. 708.

■ *Great–West* established four criteria for a proper equitable action for constructive trust under section 1132(a)(3)(B): (1) the defendant must be possession of the disputed funds; (2) the disputed funds must not have been dissipated; (3) the party seeking equitable relief must not be attempting to impose personal liability on the opposing party; and (4) the money or property at issue must be identifiable and must belong in good conscience to the party seeking relief. *Id.*; *see also Sereboff v. Mid Atlantic Med. Servs., Inc.,* 547 U.S. 356, 362–63, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006) (discussing the meaning of *Great–West* and making clear that an ERISA fiduciary may pursue "specifically identifiable" funds that are "within the possession and control" of a plan beneficiary).

Plaintiff here argues that all four *Great–West* criteria are met in this case. The disputed funds are in possession of defendant (or more precisely, in an identified trust account with her attorney). The disputed funds have not been dissipated. Plaintiff does not attempt to impose personal liability on defendant. And, finally, plaintiff contends that the money belongs to it in good conscience under the terms of the plan.

Only the fourth element merits discussion. Plaintiff noted in its written materials, and stressed again at oral argument, that plaintiff's constructive trust ERISA claim mirrors O.R.S. 742.538. Plaintiff agreed that state statutes regarding insurance are to be considered by the Court in equity in determining the propriety of awarding a constructive trust because, according to plaintiff, under the terms of the plan, plaintiff has the right to recover the disputed funds *to the maximum extent permitted by law. See* Pltf's Mem. in Sup. of Pltf's MSJ at p. 6 (arguing, in support of ERISA claim, that "[t]here is no question that, under the language of the Plan, Providence has a right to recover the full value of the medical expenses Providence paid for Charriere's treatment, to the maximum extent permitted by law,...."). Plaintiff makes clear that in this ERISA claim, it seeks rights consistent with O.R.S. 742.538 and does not seek anything more or less than what that statute allows.

Defendant contends that plaintiff is not entitled to the disputed funds under state insurance statutes and thus, plaintiff cannot successfully argue that in equity, the money belongs to plaintiff in good conscience. For the reasons explained below, I agree with defendant as to the $50,000 in

third-party liability funds paid by State Farm on behalf of Arthur. I disagree with defendant, and agree with plaintiff, as to the $50,000 paid by State Farm in UIM coverage.

A. Relevant State Statutes

The first statute concerns direct reimbursement, or interinsurer reimbursement. It provides:

(1) Except as provided in ORS 742.544 [addressing reimbursement to a provider of personal injury protection benefits and not at issue here], every authorized motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident by a person for whom personal injury protection benefits have been furnished by another such insurer, or for whom benefits have been furnished by an authorized health insurer, shall reimburse such other insurer for the benefits it has so furnished if it has requested such reimbursement, has not given notice as provided in ORS 742.536 that it elects recovery by lien in accordance with that section and is entitled to reimbursement under this section by the terms of its policy. Reimbursement under this subsection, together with the amount paid to injured persons by the liability insurer, shall not exceed the limits of the policy issued by the insurer.

(2) In calculating such reimbursement, the amount of benefits so furnished shall be diminished in proportion to the amount of negligence attributable to the person for whom benefits have been so furnished, and the reimbursement shall not exceed the amount of damages legally recoverable by the person.

(3) Disputes between insurers as to such issues of liability and the amount of reimbursement required by this section shall be decided by arbitration.

(4) Findings and awards made in such an arbitration proceeding are not admissible in any action at law or suit in equity.

(5) If an insurer does not request reimbursement under this section for recovery of personal injury protection payments, then the insurer may only recover personal injury protection payments under the provisions of ORS 742.536 or 742.538.

O.R.S. 742.534.

The next statute, O.R.S. 742.536, addresses liens. It is not at issue in the case.

The third statute, O.R.S. 742.538, addresses subrogation:

If a motor vehicle liability insurer has furnished personal injury protection benefits, or a health insurer has furnished benefits, for a person injured in a motor vehicle accident, and the interinsurer reimbursement benefit of ORS 742.534 is not available under the terms of that section, and the insurer has not elected recovery by lien as provided in ORS 742.536, and is entitled by the terms of its policy to the benefit of this section:

(1) The insurer is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident, to the extent of such benefits furnished by the insurer less the insurer's share of expenses, costs and attorney fees incurred by the injured person in connection with such recovery.

(2) The injured person shall hold in trust for the benefit of the insurer all such rights of recovery which the injured person has, but only to the extent of such benefits furnished.

(3) The injured person shall do whatever is proper to secure, and shall do nothing after loss to prejudice, such rights.

(4) If requested in writing by the insurer, the injured person shall take, through any representative not in conflict in interest with the injured person designated by the insurer, such action as may be necessary or appropriate to recover such benefits furnished as damages from such responsible person, such action to be taken in the name of the injured person, but only to the extent of the benefits furnished by the insurer. In the event of a recovery, the insurer shall also be reimbursed out of such recovery for the injured person's share of expenses, costs and attorney fees incurred by the insurer in connection with the recovery.

(5) In calculating respective shares of expenses, costs and attorney fees under this section, the basis of allocation shall be the respective proportions borne to the total recovery by:

  (a) Such benefits furnished by the insurer; and

  (b) The total recovery less (a).

(6) The injured person shall execute and deliver to the insurer such instruments and papers as may be appropriate to secure the rights and obligations of the insurer and the injured person as established by this section.

(7) Any provisions in a motor vehicle liability insurance policy or health insurance policy giving rights to the insurer relating to subrogation or the subject matter of this section shall be construed and applied in accordance with the provisions of this section.

O.R.S. 742.538.

In *State Farm Mutual Automobile Insurance Co. v. Hale,* 215 Or.App. 19, 168 P.3d 285 (2007), the Oregon Court of Appeals distilled the required elements of recovery for a health insurer under O.R.S. 742.534 and O.R.S. 742.538. As to O.R.S. 742.534, the court explained that the statute allows an insurer to recover its PIP [1] payments if three conditions were met: (1) the insurer is " 'entitled to reimbursement under this section by the terms of its policy' "; (2) the insurer has " 'not given notice as provided in ORS 742.536 that it elects recovery by lien in accordance with that section' "; and (3) the insurer " 'has requested such reimbursement.' " *Hale,* 215 Or.App. at 27, 168 P.3d at 290 (quoting O.R.S. 742.534).

As to O.R.S. 742.538, the *Hale* court explained that reimbursement of health benefits may be recovered under that statute when three conditions are met: (1) the insurer " 'is entitled by the terms of its policy' to such benefits"; (2) the insurer " 'has not elected recovery by lien as provided in ORS 742.536' "; and (3) " 'the interinsurer reimbursement benefit of ORS 742.534 *is not available under the terms of that section.'* " *Id.* at 26–27, 168 P.3d at 289 (quoting O.R.S. 742.538) (emphasis added in *Hale* ).

It is clear that the statutes give PIP insurers and insurers who have provided health benefits, three separate ways to recover the sums they have provided to an injured insured. It is also clear that they are ordered such that O.R.S. 742.534 establishes the least costly and burdensome method for the insurer to recover because it requires only a request for interinsurer

---

**1.** The insurance issue in *Hale* concerned PIP payments. Both O.R.S. 742.534 and O.R.S. 742.538 apply equally to payments made by a health insurer.

reimbursement and then provides for arbitration if there is a dispute. Second is O.R.S. 742.536. While a bit more burdensome than the recovery provided for in O.R.S. 742.534, it is still relatively straightforward because under it, the insurer places a lien on the recovery obtained by the injured insured. Third is the fallback provision of O.R.S. 742.538, which essentially provides the insurer with the subrogation rights it has at common law. Considering the structure and substance of the code provisions, the Legislature has intended O.R.S. 742.538 to be the insurers' last resort.

The Legislature also codified these statutes with liability insurance in mind. That is, the Legislature considered these reimbursement/recovery statutes for PIP and health insurers to recover sums owed by liability insurers. As explained in more detail below, O.R.S. 742.534 does not cover a reimbursement request made to an insurer other than a liability insurer. While O.R.S. 742.538 was similarly not designed to apply to recoveries sought from non-liability insurers, the language used in that statute is broad enough to allow a PIP or health care insurer to seek payment from a UIM insurer for sums paid to an injured insured.

### B. Third–Party Bodily Injury Coverage

■ Plaintiff maintains that it is owed the disputed monies paid to defendant by State Farm under an ERISA equitable constructive trust theory because the plan, consistent with O.R.S. 742.538, entitles it to seek these funds from defendant and thus, the monies, in good conscience, belong to plaintiff. As can be seen from the statutory language, and as explained in *Hale,* O.R.S. 742.538 allows plaintiff to recover the health benefits paid if it is entitled to reimbursement under its plan, it has not given notice under O.R.S. 742.536 that it elects recovery by lien, and the interinsurer reimbursement provision of O.R.S. 742.534 is not available "under the terms of that section."

Plaintiff's plan provides for the reimbursement plaintiff seeks here, to the maximum allowed by law. *See* Section 8.4.2 of the Plan (addressing proceeds of settlement or recovery and referring to "the fullest extent permitted by law," and "the maximum extent permitted by law"). Plaintiff has not given notice under O.R.S. 742.536. Thus, the issue here is whether the interinsurer reimbursement provision of O.R.S. 742.534 is available or not available under the terms of that section.

Defendant argues that the Oregon Court of Appeals answered this question in defendant's favor in *Mid–Century Insurance Co. v. Turner,* 219 Or.App. 44, 182 P.3d 855 (2008). Defendant suggests that under *Mid–Century,* when an insurer elects to proceed under an interinsurer reimbursement agreement pursuant to O.R.S. 742.534, it is foreclosed from pursuing reimbursement under O.R.S. 742.536 or 742.538.

I agree with plaintiff that the holding of *Mid–Century* is not as broad as defendant contends, and that it is distinguishable from the instant case for several reasons. First, the plaintiff in *Mid–Century* was not bringing an ERISA claim, but a breach of contract claim grounded in the novel theory that the defendant's acceptance of a settlement directly from the liability insurer prejudiced the plaintiff's ability to secure interinsurer reimbursement from the liability insurer under O.R.S. 742.534. *Id.* at 48, 182 P.3d at 858. Second, the court held that the claim was not supported by the applicable policy language. *Id.* at 57, 182 P.3d at 862. Here, the policy language supports plaintiff's right to reimbursement as long as it is consistent with the law.

Third, the court explained that even if the plan could be interpreted to support an

obligation to reimburse the plaintiff, it was unenforceable as being less favorable to insureds than the form provisions prescribed by the Insurance Code. *Id.* at 58, 182 P.3d at 863–64 (citing O.R.S. 742.021(1)). As plaintiff here notes, O.R.S. 742.021 does not apply to it as a health insurer. Thus, while the defendant prevailed in *Mid–Century,* and the plaintiff insurer could not seek reimbursement directly from the defendant after the plaintiff had sought interinsurer reimbursement under O.R.S. 742.534, the holding is limited to the facts in that case. The *Mid–Century* court made no blanket statement regarding the relationship of the relevant insurer reimbursement statutes in all situations where an insurer has paid its limits to an insured.

Furthermore, *Hale* left the question raised in this case unresolved. The court there stated that it need not reach the question of whether interinsurer reimbursement under O.R.S. 742.534 remained "available" and thus, prohibited an insurer from proceeding under O.R.S. 742.538, when the other insurer has paid its policy limits directly to an insured. *Hale,* 215 Or.App. at 24, 168 P.3d at 288; *see also Mid–Century,* 219 Or.App. at 56 n. 4, 182 P.3d at 862 n. 4 (remarking that the *Hale* court noted, but did not decide, "question of whether an insurer who has sought interinsurer reimbursement under ORS 742.534 may later seek subrogation under ORS 742.538").

In *Hale,* the court noted that the settlement documents between the injured insured and the third-party tortfeasor's motor vehicle liability carrier had not been executed when the plaintiff attempted to assert its subrogation rights under O.R.S. 742.538. Thus, at that time, the settlement of the claim by the injured party against the tortfeasor's motor vehicle liability carrier had not occurred. As a result, the court concluded that interinsur-

ance reimbursement remained "available" under O.R.S. 742.534, rendering subrogation under O.R.S. 742.538, unavailable. *Hale,* 215 Or.App. at 24, 168 P.3d at 288.

The record here shows that plaintiff attempted to invoke its rights under O.R.S. 742.534 to interinsurer reimbursement by writing letters to State Farm expressly referencing the statute and asserting its claim thereunder. Under subsection (1) of the statute, a request by a health insurer to the authorized motor vehicle liability insurer is discretionary, not mandatory. The statute gives the health insurer the option of requesting reimbursement directly from the motor vehicle liability insurer whose insured is or would be held legally liable for damages. *See* O.R.S. 742.534(1) (the motor vehicle liability insurer shall reimburse the health insurer if the health insurer has requested such reimbursement).

Nothing in the statute or the caselaw indicates that payment by the motor vehicle liability carrier to the insured person makes the arbitration proceeding set forth in O.R.S. 742.534(3), "unavailable." Subsection (3) provides for arbitration of disputes between insurers regarding "the amount of reimbursement required by this section." Because the "reimbursement required by this section" refers to payment from the motor vehicle liability carrier to the health carrier (or to the PIP carrier), the language in subsection (3) regarding "the amount of reimbursement required by this section" clearly includes the question of to whom the motor vehicle liability carrier should pay the amount owed under the bodily injury policy.

Given that plaintiff still has arbitration available to it under O.R.S. 742.534, it cannot rely on O.R.S. 742.538 for reimbursement. Nothing in *Hale* or *Mid–Century* suggests otherwise. Because plaintiff elected to pursue reimbursement under

O.R.S. 742.534, the statute's arbitration provision, while perhaps unlikely to produce funds, remains available and plaintiff may not rely on O.R.S. 742.538. As a result, plaintiff is not, in "good conscience" entitled to the $50,000 paid by State Farm to defendant under Arthur's motor vehicle bodily injury policy.

## C. UIM Coverage

■ Notably, the plain language of O.R.S. 742.534 shows that interinsurer reimbursement is not available for UIM coverage paid to the injured insured. The statute requires reimbursement to a health insurer, if requested by the health insurer, from an "authorized motor vehicle liability insurer *whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident ....*" O.R.S. 742.534(1) (emphasis added). Defendant received UIM benefits as a result of her own insurance policy, not Arthur's. Defendant, not Arthur, was State Farm's insured for UIM payments. Defendant, however, is not an insured who is or would be held legally liable for her own damages sustained in the accident. Defendant is not responsible for her own injuries. Under the plain language of O.R.S. 742.534, the insurer of the insured who is "legally liable for damages for injuries sustained" is the insurer of the third-party tortfeasor under a liability policy.

As a result, although plaintiff attempted to invoke its right to interinsurer reimbursement under O.R.S. 742.534 for the UIM coverage, it could not have succeeded in obtaining such reimbursement because O.R.S. 742.534 does not apply to recovery of payments made as UIM coverage. Accordingly, arbitration of the disputed $50,000 paid as UIM coverage to defendant, is not available under O.R.S. 742.534(3).

Under O.R.S. 742.538, if interinsurer reimbursement under O.R.S. 742.534 is un-available under the terms of that section, the insurer has not elected recovery under O.R.S. 742.536, and the insurer is entitled, under its plan language, to the benefits of O.R.S. 742.538, then the health insurer is entitled to the proceeds of a settlement that results "from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident...." O.R.S. 742.538(1).

The language in subsection (1) of O.R.S. 742.538 regarding "any person legally responsible for the accident" is similar, but not identical, to the "legally liable" language in O.R.S. 742.534(1) discussed above. O.R.S. 742.538(1) uses the broader language of "any person legally responsible" as contrasted to the "insured [who] is or would be held legally liable for damages" in O.R.S. 742.534(1). The broader language in O.R.S. 742.538(1) applies to insurers other than the third-party tortfeasor's carrier.

Here, defendant is the injured person. The language in O.R.S. 742.538 indicates that the proceeds being discussed are based on the exercise of the injured person's rights against another person legally responsible. In order to receive the UIM proceeds under her own policy, defendant must establish that her damages are indeed caused by the fault of another. *Boston Mut. Ins. v. Murphree*, 242 F.3d 899, 903 (9th Cir.2001) ("UIM coverage is fault-based meaning that insured must establish a third party's liability in tort to trigger coverage.").

Considering the fault-based requirement for UIM in the context of O.R.S. 742.538, it is clear that State Farm takes on the responsibility of "any person legally responsible for the accident" by virtue of it providing UIM to defendant in the situation where the third-party tortfeasor is underinsured. Defendant's exercise of her rights as an injured person as to her UIM

insurer places the UIM insurer in the position of being legally responsible for the third-party tortfeasor's conduct in causing the accident. In essence, when defendant shows that a third-party is legally responsible for the accident and then seeks UIM coverage because that third-party is underinsured, defendant's UIM insurer steps into the shoes of the tortfeasor's insurer.

Because interinsurer reimbursement under O.R.S. 742.534 is unavailable to plaintiff for the $50,000 State Farm paid to defendant in UIM coverage, and because plaintiff's request for this $50,000 is consistent with what is allowed under O.R.S. 742.538, this $50,000 belongs, in "good conscience," to plaintiff and, subject to defendant's "unclean hands" and "waiver" affirmative defenses, and any offset for attorney's fees and costs, plaintiff should be awarded $50,000, paid as UIM benefits, in a constructive trust for its ERISA claim.

III. Unclean Hands and Waiver

In her Answer, defendant raises affirmative defenses of unclean hands and waiver. Deft's Answer at ¶¶ 19–23. Because they are equitable defenses, I consider them only as to the equitable ERISA claim. *Del Monte Fresh Produce, N.A., Inc. v. H.J. Heinz Co.*, No. CV–07–1496–KI, 2008 WL 607415, at *1 (D.Or. Feb. 29, 2008) (defense of unclean hands is an equitable doctrine with no application to a claim at law); *Thompson v. Coughlin*, 329 Or. 630, 633, 997 P.2d 191, 192 (2000) (noting that affirmative defenses of unclean hands, waiver, and estoppel are equitable defenses); *see also California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 672–72 (9th Cir.2004) (describing affirmative defenses of waiver and estoppel as equitable defenses).

A. Unclean Hands

▆ To prevail on an unclean hands defense, defendant must show that "the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir.2003) (internal quotation omitted). In the "clean hands doctrine" "equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir.1985).

Defendant maintains that plaintiff unfairly, without justification, and in contravention of the plan, terminated health benefits owed to defendant. As a result, defendant contends, plaintiff has unclean hands, precluding plaintiff from obtaining any relief in its ERISA claim.

Defendant, however, fails to create the necessary, or any, factual record in support of its unclean hands affirmative defense. Defendant argues in her memorandum opposing plaintiff's motion for summary judgment that plaintiff terminated benefits owed to defendant under the plan. Deft's Mem. in Opp. to Pltf's MSJ at pp. 3–4. Defendant asserts that "Warren made the determination to cut off benefits for treatment related to the motor vehicle accident.... According to Ms. Warren, the only basis for which benefits were terminated was that she had received a settlement." *Id.* at p.

As support, defendant, in her memorandum, quotes from pages 95 and 96 of Warren's deposition. *Id.* at p. 4 n. 3 & 4. The problem, however, is that pages 95 and 96 of Warren's deposition appear nowhere in the record. Defendant's assertion that this was Warren's deposition testimony does not make it so. Rather, the authentication of a deposition excerpt is required to create an issue of fact in opposition to a summary judgment motion. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir.2002) (explaining that a properly authenticated deposition excerpt iden-

tifies the name of the deponent and the action, and requires, in addition to the excerpt itself, the reporter's certification that the deposition is a true record of the testimony of the deponent).

Because there is no admissible evidence in the record showing what benefits plaintiff paid, did not pay, and the timing of the unpaid benefits, defendant fails to create an issue of fact as to "unclean hands" sufficient to oppose plaintiff's summary judgment motion on the ERISA claim.

### B. Waiver

█ Defendant's waiver argument is that plaintiff elected to limit its recovery to whatever remedies might exist under Oregon state law and thus, waived any rights of equitable recovery existing under federal law. Deft's Answer at ¶¶ 22–23. As I understand it, defendant contends that by virtue of citing O.R.S. 742.534 in its letters to State Farm, plaintiff elected to pursue a recovery of the sums it paid as health benefits on behalf of defendant, only under state law and is thus precluded from asserting other available means of recovery under ERISA.

Defendant cites no law in support of this position. Rather, defendant appears to rely solely on its interpretation of the Oregon statutes as articulated above. According to defendant, once an insurer seeks interinsurer reimbursement under O.R.S. 742.534, that insurer may not pursue reimbursement under O.R.S. 742.536 or O.R.S. 742.538 after a settlement has been paid to the injured party on whose behalf PIP or health benefits have been paid.

There are at least two problems with defendant's position. First, as explained in the analysis above, I reject defendant's legal argument as to the $50,000 paid in UIM coverage because those funds were not subject to recovery by plaintiff under O.R.S. 742.534. Second, even if defendant correctly interpreted the Oregon insurance

statutes, nothing in those statutes, other statutes, or caselaw indicates that plaintiff's attempt to recover the sums it paid on defendant's behalf directly from the motor vehicle liability insurer, forfeits plaintiff's right to proceed with any available claim it may have by virtue of being an ERISA fiduciary.

In a somewhat analogous case, Judge Haggerty recently rejected the defendant's argument that ERISA preemption was inappropriate because the plaintiff insurer had initially asserted its right to reimbursement under Oregon statute, particularly O.R.S. 742.536, in a letter. *Providence Health Plans of Or. v. Simnitt,* No. CV–08–44–HA, 2009 WL 700873, at *4 (D.Or. Mar. 13, 2009). There, analyzing the issue as one of judicial estoppel, Judge Haggerty concluded that mentioning the Oregon statute in a letter sent nearly two years before litigation began, was an insufficient basis for estopping the plaintiff from arguing that the Oregon statutes were preempted by ERISA. *Id.*

The waiver defense is not an impediment to plaintiff's summary judgment motion on the ERISA claim.

### IV. Breach of Contract Claim

Under *Providence Health Plan v. McDowell,* 385 F.3d 1168, 1172 (9th Cir. 2004), plaintiff may maintain a separate, state law breach of contract claim, not preempted by ERISA. Plaintiff contends that defendant has breached her obligations under the plan to reimburse plaintiff, from the State Farm settlement proceeds, for the health benefits plaintiff provided to defendant as a result of the accident.

In particular, plaintiff relies on Section 8.4 of the plan, quoted above, addressing third-party liability and subrogation. As with the ERISA claim, plaintiff contends that its breach of contract claim is consis-

tent with state insurance law, particular O.R.S. 742.538. And, as indicated above, section 8.4.2, regarding the proceeds of a settlement or a recovery, specifically gives the plan rights consistent with the law.

Although O.R.S. 742.021, which requires property and casualty insurance policies to carry provisions substantially similar to statutory requirements, and provisions that are not less favorable to the insured, does not apply to plaintiff as a health insurer, O.R.S. 742.538 itself provides that "[a]ny provisions in a ... health insurance policy giving rights to the insurer relating to subrogation or the subject matter of this section shall be construed and applied in accordance with the provisions of this section." O.R.S. 742.538(7).

■ Given that the breach of contract claim is premised on O.R.S. 742.538, the analysis explained above in regard to the ERISA claim is equally applicable to this claim. Defendant has not breached the plan provisions as to the $50,000 she received from State Farm on behalf of its insured Arthur as liability coverage, because under O.R.S. 742.538, plaintiff cannot seek that $50,000 from defendant as long as interinsurer reimbursement remains available under O.R.S. 742.534. For the reasons explained above, such reimbursement remains available as to the bodily injury coverage of $50,000.

■ Defendant has, however, breached the plan as to the $50,000 she received from State Farm in UIM coverage. Because interinsurer reimbursement under O.R.S. 742.534 is not available to plaintiff for that money, it may, consistent with O.R.S. 742.538, enforce the plan provisions requiring defendant to reimburse the proceeds of that settlement to plaintiff. I grant summary judgment to plaintiff on the breach of contract claim, in part.

## V.  Offset for Costs & Fees

■ Under the plan, defendant is entitled to an offset for "out of pocket expenses" from any recovery of settlement proceeds by plaintiff. Section 8.4.2 ("We are entitled up to the full value of the benefits provided by Us for the condition, calculated using Our UCR charges for such Services, less the Member's out of pocket expenses.") (emphasis omitted). Additionally, O.R.S. 742.538 contemplates that the insured and the insurer share in the "transactional costs of litigation[.]" *Mid–Century,* 219 Or.App. at 58, 182 P.3d at 864 (citing O.R.S. 742.538(1), (4), (5)).

Consistent with plaintiff's position that its equitable claim mirrors O.R.S. 742.538, the "good conscience" determination that the $50,000 in UIM benefits paid to defendant more appropriately belongs to plaintiff, requires that any attorney's fees or costs defendant incurred in obtaining that $50,000 be deducted from the constructive trust award. Additionally, because the breach of contract claim is based on the plan language, an offset to the damages awarded under that claim is also required.

The problem here is that neither party submits reliable, admissible evidence on this issue. In her declaration in support of plaintiff's summary judgment motion, Warren states that State Farm agreed to pay both the $50,000 bodily injury liability policy and the $50,000 in UIM coverage to defendant before defendant retained an attorney and thus, any attorney fees and expenses defendant incurred were for the purpose of resisting plaintiff's efforts to seek reimbursement from defendant. Warren Declr. at ¶ 11. Plaintiff provides no explanation of how Warren has personal knowledge of when defendant retained counsel or how Warren has personal knowledge of the date on which State Farm agreed to make the payments to defendant. There is also no obvious exhib-

it or testimony in the record on which I can evaluate Warren's personal knowledge.

Defendant similarly submits no admissible evidence revealing when she hired counsel and the purpose for which she hired counsel. Defendant states, in a legal memorandum, that her attorney was required to file a lawsuit in the underlying case. Deft's Reply Mem. in Sup. of Deft's MSJ at p. 8. Defendant offers no evidence in support of this assertion, and more importantly, she offers no evidence revealing when she hired counsel. Also, in a responsive fact assertion, defendant maintains that she was forced to hire an attorney to protect her rights of recovery against the at-fault driver and her own insurance company. Deft's Resp. to Pltf's CSF at ¶ 2. Defendant again cites no evidence in support of this assertion and offers no evidence of when her relationship with counsel began.

With this record, I can make no determination regarding the propriety of a set-off for attorney's fees and costs. If the parties are unable to resolve the issue, the trier of fact will resolve it.

CONCLUSION

Plaintiff's motion for summary judgment (# 33) is granted in part and denied in part. Defendant's motion for summary judgment (# 32) is granted in part and denied in part.

IT IS SO ORDERED.